# COSTELLO *v.* PALMER.

APPEALABLE ORDERS; HABEAS CORPUS; FRAUDULENT TRANSFER BY DEBT-
ORS; JUSTICES OF THE PEACE; SECURITY FOR COSTS; CAPIAS AD
SATISFACIENDUM; REPEAL BY CODE; AFFIDAVITS, SUFFICIENCY OF.

1. An order dismissing a petition for a writ of *habeas corpus* by one
who is in custody of the United States marshal under a writ of
*capias ad satisfaciendum* issued in a proceeding under Secs. 794
and 795, R. S. D. C., is a final order and appealable to this court,
where the *habeas corpus* proceeding is an independent suit growing
out of the preceding cause but having no connection with it.

2. An appeal from an order dismissing a petition for a *habeas corpus*
will not be dismissed where the appellant has been released on
bail pending the appeal.

3. In an action by a nonresident plaintiff before a justice of the peace,
a general appearance by the defendant, consisting of a request
for a postponement, will constitute a waiver of the requirement
of Sec. 1002, R. S. D. C., that nonresidents shall not commence
suit before any justice without first giving a sufficient security
for costs; *following* Guarantee Co. v. Pendleton, 14 App. D. C.
384.

4. An act of Congress enacted as late as 1874 cannot be regarded as
obsolete because recourse has not often been had to it since its
passage.

5. Secs. 794 and 795, R. S. D. C., providing for the arrest and detention
of debtors fraudulently conveying away their property, were re-
pealed by the code for the District of Columbia, which went into
effect from and after January 1, 1902.

6. A proceeding under Secs. 794 and 795, R. S. D. C., providing for
the arrest and detention of debtors fraudulently conveying away
their property, is a proceeding affecting a "substantial right,"
within the meaning of the proviso of Sec. 1638 of the code, that
"the provisions of this code relating to procedure or practice,
and not affecting the substantial rights of parties shall apply
to pending suits," and therefore the code does not affect such a
proceeding if pending when the code went into effect.

7. An affidavit upon which a *capias ad satisfaciendum* is issued under
Secs. 794 and 795, R. S. D. C., is sufficient when made by the
treasurer and agent of the corporation which is the plaintiff in
the suit in which the writ is issued, and although made on infor-
mation and belief.

8. Secs. 794 and 795, R. S. D. C., providing for the issue of the *capias
   ad satisfaciendum* for the arrest of debtors fraudulently conveying
   away their property, apply as well to a fraudulent conveyance
   of real estate as to a fraudulent transfer of personal property.

No. 1191. Submitted May 8, 1902. Decided June 4, 1902.

HEARING on an appeal by the petitioner from an order of
the Supreme Court of the District of Columbia, dismissing
a petition for a writ of *habeas corpus,* and remanding the
petitioner to the custody of the marshal, and also on a motion
by the respondent, the appellee here, to dismiss the appeal.
*Motion to dismiss denied and order appealed from affirmed.*

The COURT in the opinion stated the case as follows:

This is an appeal from the Supreme Court of the District
in a *habeas corpus* case.

On May 2, 1901, a corporation of the State of Maryland,
designated as " The Bokel-Gwynn-McKenney Company," of
the city of Baltimore, instituted a suit before a justice of the
peace in this District to recover from the appellant, John F.
Costello, an indebtedness of $100.53, with interest thereon
from February 28, 1900. It does not appear from the record
before us that the company gave any security for costs, as re-
quired by section 1002 of the Revised Statutes of the United
States relating to the District of Columbia, which provides
that "nonresidents of the District of Columbia shall not
commence suit before any justice of the peace without first
giving security for costs;" and it seems to be conceded that
no such security was in fact given. In answer to the sum-
mons served upon him, the appellant, John F. Costello, ap-
peared before the justice, and twice requested and secured a
continuance of his case; but failing to appear on the day
finally set for the trial, he had judgment rendered against
him for the amount of the plaintiff's claim.

Execution was issued on this judgment, and was returned
unsatisfied. Then, on June 19, 1901, the plaintiff caused a
certified copy of the judgment to be filed in the Supreme

Court of the District, as authorized by law; and on the same day there was a writ of *fieri facias* issued thereon, which two days afterwards, on June 21, 1901, was returned unsatisfied.

Thereupon, proceeding under sections 794 and 795 of the Revised Statutes of the United States relating to the District of Columbia, which provided for the arrest and detention of debtors fraudulently conveying away their property, the plaintiff company, on the same last mentioned day, June 21, 1901, caused an affidavit of Albert H. Wilson, who describes himself in it as the treasurer and agent of the company, to be filed in the cause in the Supreme Court of the District, in which affidavit it was stated, after the recital of the institution of the suit, the rendition of judgment, and the filing of the latter in the Supreme Court of the District, "that after the institution of said suit and before the obtaining of said judgment, the defendant, John F. Costello, conveyed away, lessened, and disposed of his property, rights, and credits, as the plaintiff believes and affiant avers, with intent thereby to hinder or delay the recovery of its debt; that at the time of the institution of said suit the said John F. Costello was the owner in his own right of an undivided one-fifth interest in part of lots nineteen and twenty, in square numbered 455 * * *; that said John F. Costello conveyed all of his interest and estate in the said property, which was of great value, to one Jeremiah A. Costello, his brother, who had full knowledge and notice of said suit, the consideration named in the said deed being ten dollars; that no consideration was paid for the said property, but the said conveyance was executed and delivered by the defendant, John F. Costello, for the purpose of hindering or delaying the recovery or payment of the debts of the said John F. Costello, including the debt due to and the judgment held by the plaintiff herein; and that by reason of the matters and things aforesaid the defendant has rendered himself and now is wholly insolvent, and has no property, assets, or means out of which the said judgment can be satisfied.".

Upon this affidavit and the plaintiff's order filed in the cause the clerk of the Supreme Court of the District issued

a writ of *capias ad satisfaciendum,* addressed to the marshal and directing him to arrest and hold the defendant, John F. Costello, to satisfy the plaintiff's judgment. Thereupon Costello sued out the writ of *habeas corpus,* filing his petition therefor not in the suit in which he was arrested, but as an independent proceeding. The marshal had already arrested Costello under the writ of *capias ad satisfaciendum;* and to the writ of *habeas corpus* he made return of the proceedings under which the appellant was held. On June 22, 1901, pending a hearing, Costello was enlarged on bail. No hearing seems to have been had on the writ of *habeas corpus* until January 22, 1902. At all events, no decision was rendered until this last mentioned day, when the court below made an order dismissing the petition, and remanding Costello to the custody of the marshal.

From this order an appeal was forthwith taken to this court, and perfected; and at the same time the appellant was admitted to bail, pending the determination of his appeal in this court.

*Mr. Henry E. Davis* and *Mr. Crandal Mackey* for the appellant:

1. The defendant never pleaded to the merits of the case; he never waived the positive condition that the plaintiff should not commence his suit without first giving security for costs; he never consented to the noncompliance of the nonresident plaintiff with the condition precedent prescribed by the statute for the benefit and protection of defendants. The entry on the record is as follows: " Defendant did not appear." The general doctrine that when a party does not appear he waives nothing is well settled. 2 Encyc. Pl. & Pr., p. 601. See also *Clark* v. *Van Vracken,* 20 Barb. (N. Y.) 278; *Holgate* v. *Broome,* 8 Minn. 243; *Whitney Co.* v. *Pettit,* 34 Mo. App. 536. Nor does a failure to appear waive any question of jurisdiction. *Commissioner Talladega* v. *Thompson,* 18 Ala. 694; *Larocque* v. *Harvey,* 57 Hun (N. Y.), 366; *Tiffany* v. *Gilbert,* 4 Barb. (N. Y.) 320; *Williams* v. *Wheeler,* 28 Barb. (N. Y.) 669. Failure

of the defendant to appear on the day of continuance is the same as if he fails to appear at the return. *Vought* v. *Soper,* 73 Pa. St. 49. As to right to here inquire into the jurisdiction of the magistrate's court, see *Elliott* v. *The Lessee of Piersol,* 1 Pet. 329; *Ex parte Crenshaw,* 15 Pet. 119; *Lessee* v. *Stuart,* 3 How. 750; *Harris* v. *Hardeman,* 14 How. 334; *Thompson* v. *Whitman,* 18 Wall. 457; *Dynes* v. *Hoover,* 20 How. 65, 80; *Fahry* v. *Motu,* 67 Md. 250; *McIntire* v. *Robinson,* 81 Me. 583; *Gallatin* v. *Cunningham,* 8 Cow. (N. Y.) 361; *Denning* v. *Corwin,* 11 Wend. (N. Y.) 647; *Anderson* v. *Binford,* 58 Tenn. 310; *Jones* v. *Ritter,* 56 Ala. 270; *Ex parte Mirande,* 73 Cal. 365; *Ex parte Kearney,* 55 Cal. 212; *Miller* v. *Schneider,* 6 Ind. 1.

2. By section 1640 of the code it is apparent that the only acts of Congress in force in the District of Columbia since January 1, 1902, when the code went into effect, are general statutes of the United States not locally inapplicable to the District of Columbia, and general statutes of the United States by their terms applicable to the District of Columbia as well as elsewhere. So it is plain that the act of 1844, applying solely to the District of Columbia, under which this arrest was made, was repealed when the code went into effect, for that is plainly the effect of section 1, chapter 1, and section 1636 of the code. It may be argued by the appellee that section 1638 of the code saves his case which was begun before January 1, 1902, when the code went into effect; but the proviso of that section expressly applies the provisions of the code to pending as well as future suits as regards *the method of practice and procedure* to be followed, where the substantial rights of parties are not involved. The plaintiff (appellee) in this case, under the rules of practice and procedure then in force, established his " substantial rights " and procured a judgment in June, 1901, against the defendant (appellant). After January 1, 1902, when the code went into effect, he invokes the practice and procedure already repealed in a way that can have no bearing on his " substantial rights," which he has long before had adjudicated in a justice's court. He pro-

cures a *capias ad satisfaciendum,* and attempts to collect his judgment through a method of practice and procedure (as distinguished from jurisprudence) which has been repealed. The act upon which the *ca. sa.* issued is repealed before the time arrives for the defendant in custody to demand that issues be framed in accordance with such repealed statute. The circuit judge cannot impanel a jury to try such issues because the law providing for such a jury is repealed. The substantial rights of the plaintiff are in no way affected by the change in the method of practice and procedure introduced by the code, for he has not only his remedy by bill in equity, which, if his affidavit is true, is a plain one, but he has two ways pointed out by the code (sections 470 and 1120) in which to follow and get execution on the defendant's property. The code has supplanted the barbarous means of trying to collect a judgment by putting the debtor in jail, by methods more intelligent, more humane, more far-reaching, and more effective. The defendant being in custody of the law under the provisions of a statute which provides for the framing of issues that cannot be framed, and the impaneling of a jury that cannot be impaneled because the statute is repealed, there is nothing for the marshal to do but release him. The Supreme Court of the United States in *South Carolina* v. *Gailliard,* 101 U. S. 438, held that no proceedings can be carried on under a law that has ceased to exist and that " all such suits must stop where the repeal finds them. If full relief has not been granted before the repeal went into effect it cannot be after." See also *Yeaton* v. *United States,* 5 Cranch, 282; *" La Irresistible,"* 7 Wheat. 551.

In the light of the above decisions it is hard to see how the plaintiff (appellee) could maintain the *ca. sa.* method of collecting his alleged judgment even if the proviso applying the code method of practice and procedure to pending suits had not been inserted. Apart from any question of repeal by the code the act of 1844, providing imprisonment for debt for alleged fraudulent disposal of property, had become obsolete. In the fifty-eight years that have elapsed since its

passage, there is not a single reported case of its ever being enforced or of any person being imprisoned under it. There is only one reported case of any attempt to enforce it (4th Mackey, 259), and that failed.

3. If the said act was in force the affidavit on which the *ca.. sa.* was issued does not comply therewith.

Statutes which provide for the arrest of defendants in civil actions, being in derogation of personal liberty, are strictly construed. *Spice* v. *Stemruck,* 14 Ohio St. 213; *Mason* v. *Hutchins,* 20 Me. 78. And plaintiffs must comply strictly with such statutory provisions. *Grotan* v. *Frizzell,* 20 Ill. 291; *Tuttle* v. *Wilson,* 24 Ill. 553. It will be seen that the statute requires the affidavit upon which the *ca.. sa.* is to issue to be made by the plaintiff. In the case of a corporation, affidavit must be made by officer expressly authorized by corporation to make it. *Dodge* v. *N. W. Packet Co.,* 13 Minn. 458.

No authority is shown on the face of the affidavit for Albert H. Wilson to make such an affidavit. Wilson expressly distinguishes between himself and the plaintiff where he says in his affidavit that " *the plaintiff believes and affiant avers.*" Where the statute requires the affidavit of the plaintiff, no other affidavit than the plaintiff's will authorize the attachment. *Ex parte Hartley,* 5 Ark. 32; Encyc. Pl. & Pr., Vol. 3, p. 8; *Pool* v. *Webster,* 3 Metc. (Ky.) 278; *Mantz* v. *Hendley,* 2 Hen. & M. (Va.) 308. The affidavit here states that " the plaintiff believes." It is well established that affidavits in attachment, based on information and belief, are insufficient. *Meckler* v. *Caldwell,* 1 Cranch C. C. 372; *Wright* v. *Cogswell,* 1 McLean (U. S. C. C.), 471. The Supreme Court of the District of Columbia, in the case of *Newman* v. *Hexter,* MacA. & Mackey, 95, held that an affidavit in attachment, based upon information and belief, is insufficient. See also 18 Wend. 611.

*Mr. Levi H. David* for the appellee:

1. It is submitted in support of the motion to dismiss this appeal, that, in view of the following authorities and in the

absence of a statute allowing an appeal to this court from an order dismissing a petition for a writ of *habeas corpus,* the appeal taken herein should be dismissed. *Cross* v. *Burke,* 146 U. S. 82; *In re Schneider,* 148 U. S. 157; *In re Chapman,* 156 U. S. 211; *In re Heath,* 144 U. S. 92; *Cross* v. *United States,* 145 U. S. 571; *Ex parte Dries,* 3 App. D. C. 165; *Petition of Samuel S. Coston,* 23 Md. 271; *Coston* v. *Coston,* 25 Md. 500; *State* v. *Boyle,* 25 Md. 509; *Bell* v. *State,* 4 Gill, 304; *Coston* v. *Coston,* 23 Md. 271; *The Mayor, etc.* v. *Howard,* 80 Md. 244; 9 Encyc. Pl. & Pr. 1070, citing authorities; *Ex parte Kaine,* 3 Blatchf. (U. S.) 1; 12 C. C. A. 145; 15 Am. & Eng. Encyc. of Law (2d ed.), 211; *Chesapeake & Ohio Canal Co.* v. *Union Bank of Georgetown,* 8 Pet. 259.

2. Upon the dismissal of appellant's petition in the court below, he gave bond pending the appeal to this court. He is not, therefore, now restrained of his liberty. 9 Encyc. Pl. & Pr. 1084; *Wallace* v. *Prott,* 4 Mack. 259.

Mr. Justice MORRIS delivered the opinion of the Court:

On behalf of the appellee a motion has been made to us to dismiss the appeal on various grounds stated, which are these:

(1) That the order appealed from is not a final appealable order.

(2) That there is no statute in force in this District which allows an appeal from an order dismissing a petition for the writ of *habeas corpus.*

(3) That the sections 763 and 764 of the Revised Statutes of the United States, as amended by act of Congress of March 3, 1885 (23 Stat. 437), which authorize and regulate appeals in *habeas corpus* cases in the courts of the United States, are not in force in this District.

(4) That the appellant, having been enlarged on bail, is not now restrained of his liberty, and therefore is not entitled to the writ of *habeas corpus.*

We do not regard any of these grounds as well taken. Sections 763 and 764 of the Revised Statutes of the United

States are not required to give this court jurisdiction on appeal in *habeas corpus* cases. That jurisdiction was conferred in most ample terms by the statute which created this court, and wherein it was provided " that any person aggrieved by any final order, judgment or decree of the Supreme Court of the District of Columbia, or any justice thereof, may appeal therefrom to the Court of Appeals hereby created." And that the order appealed from is a final and appealable order, is very clear. It is the final order in the cause; there is nothing else to be done. That there is something else to be done in the cause in which the appellant was arrested is of no consequence to the decision of this cause. The proceeding in *habeas corpus* is an independent suit, growing out of the preceding cause, but having no necessary dependence thereon or connection therewith. The final character of the order dismissing the petition in *habeas corpus* cases, and the appellate jurisdiction of this court in the premises, are amply illustrated by the numerous causes of the kind which have been brought to this court since the time of its creation.

The argument that the appeal should not be entertained, because the appellant has been released on bail, and therefore, as is claimed, is not now restrained of his liberty, is plainly unsound. The appellant may not be in prison; but he is in the custody of the law, and is most unquestionably restrained of his liberty.

The motion of the appellee to dismiss the appeal cannot therefore be allowed.

Passing to the merits of the case, we find that the appellant has assigned four assignments of error. These are in their order the following:

1. That it is apparent on the face of the record that the judgment of the justice of the peace, upon which the writ of *capias ad satisfaciendum* was issued, is void on the ground that the justice was without jurisdiction to render it, inasmuch as the plaintiff, being a nonresident, had given no bond.

2. That the act of Congress of June 17, 1844, under which, as it is assumed, imprisonment for debt, in case of fraudulent

transfer of property, was authorized, is no longer in force in the District.

3. That, even if the act is in force, the plaintiff's affidavit does not comply with its requirements.

4. That the act in question does not apply to transfers of real estate, but only to personal property.

1. With reference to the first assignment of error, we may regard as of no consequence the fact that it wrongly recites the requirement of the statute in regard to suits by nonresidents before justices of the peace. The statute does not require any bond to be given, but only " security for costs;" and security for costs may be given in other ways than by bond. But assuming the appellant's objection to be that no " security for costs " was given before the justice of the peace in this case, as required by the statute, yet we are of opinion that the objection here is not well founded. The giving of such security was a condition precedent, which the appellant, the defendant in the cause, might have waived, and did in fact waive by his general appearance in the cause. For that there was a general appearance by the defendant is very plain. He appeared on two successive days to request a continuance; and this was not a special, but a general appearance. The fact that he did not afterwards appear at the hearing on the day to which he agreed to have the hearing assigned, is of no consequence. That was a default, which we may well assume to have been because he had no defense to the suit, and not a failure of appearance.

The precise point here raised was decided by this court adversely to the contention of the appellant in the case of *Guarantee, etc., Co.* v. *Pendleton,* 14 App. D. C. 384, following the authority of the Supreme Court of the United States in the case of *Railway Co.* v. *McBride,* 141 U. S. 127.

2. Again in the second assignment of error the statute law is wrongly cited. The contention is that the acts of Congress of June 17, 1844 (5 Stat. 678) and February 4, 1845 (5 Stat. 721), under which the writ of *capias ad satisfaciendum* was authorized in cases of fraudulent transfer of property to evade the payment of debts, have been repealed

by the now existing code, and in any event have become obso-
lete.    The acts of June 17, 1844, and February 4, 1845,.
could not have been repealed by the code; for they had been
repealed twenty-eight years ago by the Revised Statutes of
the United States relating to the District of Columbia by the
fact of the incorporation of the substance of them into sec-
tions 794 and 795 of these Revised Statutes and by virtue of
the repealing clause attached to that revision.    The question
is, not whether the acts of Congress of June 17, 1844, and
February 4, 1845, have been repealed by the code, but
whether sections 794 and 795 of the Revised Statutes of the
United States for the District of Columbia enacted in 1874
have been repealed by the code, so far as they apply to the
present case, or have become obsolete, as claimed on behalf of
the appellant.

The proposition that these enactments must be regarded as
obsolete, cannot be entertained for a moment.    It would
seem to be the fact that recourse has not often been had to
them; but we cannot regard any act of Congress as obsolete
which has been enacted as late as 1874.    The only question
requiring our consideration is whether and how far these sec-
tions have been repealed by the code which went into effect
on January 2, 1902, while this cause was pending.

That sections 794 and 795 of the Revised Statutes for this
District were repealed for all future purposes, there can be
no doubt.    Such is the effect of the first of the repealing
clauses (section 1636) embodied in the code.    This section
provides that " all acts and parts of acts of the general
assembly of the State of Maryland, general and permanent
in their nature; all acts and parts of acts of the legislative
assembly of the District of Columbia; and all like acts and
parts of acts of Congress applying solely to the District of
Columbia in force in said District on the day of the passage
of this act are hereby repealed, except, &c., &c., &c. (the
exceptions are not here relevant)."    But section 1638 of the
code provides that " The repeal by the preceding section of
any statute, in whole or in part, shall not affect any act done,
or any right accruing or accrued, or any suit or proceeding

had or commenced in any civil cause before such repeal; but all rights and liabilities under the statutes or parts thereof so repealed shall continue and may be enforced in the same manner as if such repeal had not been made: *Provided,* That the provisions of this code relating to procedure or practice and not affecting the substantial rights of parties shall apply to pending suits or proceedings, civil or criminal." And by this section undoubtedly the provisions of sections 794 and 795 of the Revised Statutes must be regarded as continued in force for the purposes of the present proceeding which was pending when the code went into effect — unless those provisions must be construed to be matters of procedure or practice "*not affecting the substantial rights of parties.*"

It is unnecessary here to enter into the discussion of the vexed question how far the legislature may alter, amend, or take away a remedy, without impairing the existing rights of parties, otherwise entitled to have the benefit of the remedy. Nor is it necessary here to hold that the provisions of sections 794 and 795 were not exclusively matters affecting the remedy, and not the absolute right of parties. But conceding that the writ of *capias ad satisfaciendum* and the proceedings thereunder given by sections 794 and 795 of the Revised Statutes affect the remedy alone, which it is competent for the legislature to alter at its pleasure, yet we find from the express language of section 1638 of the code that not all matters of procedure or practice established or regulated by it were to go into immediate operation on January 2, 1902, but that, as to pending suits, the old procedure, so far as it affected the substantial rights of parties, was to continue in force.

Now, we think that it would be difficult to find anything in the whole range of procedure and practice that more vitally affects the substantial rights of parties than do the provisions of law in regard to execution and satisfaction of judgments. Rules of evidence may be changed; methods of trial may be modified; the right of appeal may be restricted or taken away; but none of these so affect the substantial rights of parties as to the methods provided for the execution

of judgments. Coequal, or almost so, with the right to have
a hearing, is the right to have execution of one's judgment;
and while certain modes of execution, such as imprisonment
for debt, may become abhorrent to the sense of the com-
munity, and may be changed or even entirely abrogated, yet,
when a statute, which purports to establish new methods of
procedure, retains, or purports to retain the substantial parts
of the old methods for the suits then pending, it is difficult to
see why we should seek to nullify the reservation by refusing
to give to it the effect which it was evidently intended to have.

The section 1638 of the code under consideration, is to
the effect that, in the matter of procedure or practice, pend-
ing suits must be governed by the provisions of the code
where the procedure does not affect the substantial rights of
parties. The inference is inevitable, indeed the very letter
of the code is to the effect, that, where the procedure does
affect the substantial rights of parties, the code shall not
apply as to the pending suits, but only the old law. The
question, therefore, is, whether, as to the proceeding now
before us, the right to the writ of *capias ad satisfaciendum*
is such a substantial right as to be preserved by the reserva-
tion of the code; and our answer to this question is that we
cannot conceive of any more substantial right in the law of
procedure than this.

We are of opinion, therefore, that, so far as it concerns the
present suit, the sections 794 and 795 of the Revised Statutes
of the United States relating to the District of Columbia
were kept in force by section 1638 of the code.

3. The third assignment of error, if we make the correc-
tion in it of the proper statutory reference, as already stated
with regard to the second assignment, is that, even if sections
794 and 795 of the Revised Statutes for the District are yet
in force for the purpose of this present proceeding, yet that
the affidavit, upon which the *capias ad satisfaciendum* was
issued, does not comply with their requirements. It is argued
that there is no authority shown in Albert H. Wilson to
make such an affidavit for the corporation, and that the affi-
davit is made on information and belief, and is, therefore,

insufficient. But if this alleged defect or insufficiency in the affidavit is a matter that may be inquired into in this collateral proceeding, about which we need not here express an opinion, the plain answer to the contention is that there is no such insufficiency in the affidavit, as is claimed.

It is objected to it, in the first place, that it is not shown that Albert H. Wilson was authorized as agent to make the affidavit. But Wilson states in the affidavit that he was the treasurer and agent of the company; and as treasurer he was the financial agent of the company, and as such the most proper person to make the affidavit. The affidavit itself gives *prima facie* proof of his authority to make it.

In the next place, it is urged that the affidavit is made upon information and belief, and that for this reason it is objectionable. But it will be found upon examination that the affidavit strictly follows the lines of the statute. These are that, if the plaintiff will make oath " that the defendant or defendants has or have conveyed away, lessened, or disposed of, his or their property, rights, or credits, or is or are about to remove, or hath or have removed, his or their property from this District, *as he or she believes,* with intent thereby to hinder or delay the recovery or payment of his debts," etc. A comparison of the affidavit with this statute shows that there is no failure to comply with the requirements of the latter.

4. The citation just made from the statute is sufficient also to dispose of the appellant's fourth assignment of error, which is that the statute refers to personal property, and not to real estate. We find no warrant for any such construction. The terms of the statute are broad enough to include both classes of property; and there is no reason to be found either in the statute itself, or anywhere else in the law, or in public policy, to restrict its application to personal property. On the contrary, some of the words used, such as " convey away," are more appropriate to real estate than to personal property.

We find no merit in this assignment of error.

From what we have said it follows in our opinion that there was no error in the action of the court below; and that the order appealed from should be *affirmed, with costs. And it is so ordered.*